**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| VINCENT BONAVITA, | : | CIVIL ACTION NO. |
| Plaintiff, | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| CORNERSTONE BUILDING BRANDS, INC. | : | |
| Defendant. | : | NOVEMBER 2, 2023 |

**COMPLAINT**

**JURISDICTION AND VENUE**

1. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

4. Supplemental jurisdiction over Plaintiff's supplemental state law claims are invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. §1988.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6. Plaintiff received a Notice of Right to Sue on August 7, 2023, from the Equal Employment Opportunity Commission in Charge No. 16A-2023-00308, and timely files this action.

**PLAINTIFF**

7. The Plaintiff, Vincent Bonavita ("Plaintiff" or "Bonavita") is a natural person and resides at 91 Mattabasset Drive, Meriden, CT 06450.

**DEFENDANT**

8. The Defendant, Cornerstone Building Brands, Inc. ("Defendant" or "Cornerstone"), is a foreign company, incorporated in the State of Delaware, is registered to conduct business in the State of Connecticut, has its headquarters at 5020 Weston Pkwy, 100, Cary, NC, 27513, and conducts substantial business in its Connecticut sales territory.

9. Defendant employs more than fifteen (15) employees.

**FACTUAL ALLEGATIONS**

10. Cornerstone is a national construction services company.

11. Bonavita was hired by Cornerstone on February 23, 2020, as a Territory Sales Manager.

12. Bonavita is male.

13. Bonavita was hired to work remotely.

14. Bonavita was hired to service Cornerstone's sales market in Connecticut.

15. Bonavita conducted business for Cornerstone in Connecticut.

16. On or around March 1, 2020, Bonavita's supervisor was terminated.

17. Bonavita was then supervised by Regional Sales Manager John Mauthe "Mauthe.")

18. Mauthe supervised approximately ten sales territories, including Connecticut.

19. In March 2020, Cornerstone reduced or eliminated in-person employee meetings, training, and travel due to the COVID-19 pandemic.

20. Cornerstone continued its limited in-person interaction for employees for approximately 16 months.

21. During the beginning of the COVID-19 pandemic, Mauthe devoted time during normal business hours to a personal construction project.

22. As a result of Mathe's personal construction project during business hours, Mauthe was frequently unavailable during working hours.

23. Bonavita received no training on his job duties from Mauthe.

24. Bonavita relied on Territory Sales Managers in his region for instruction and assistance.

25. Aaron Stout ("Stout") was the Territory Sales Manager for Pennsylvania.

26. Tom Bosso ("Bosso") was the Territory Sales Manager for Delaware.

27. Kevin Lima ("Lima") was the Territory Sales Manager for Maine, Rhode Island, and Boston, Massachusetts.

28. Gabrielle Lundy ("Lundy") was the Territory Sales Manager for New Jersey.

29. Lundy is female.

30. In 2021, Bonavita received an inheritance from the unfortunate passing of his mother.

31. As a result of his inheritance, Bonavita started Bonavita Luxury Lavs LLC ("BLL") in January 2022.

32. BLL rents high-end portable restroom trailers for events, including weddings and fundraisers.

33. During Bonavita's employment with Cornerstone, BLL did not rent trailers for events that took place during the week.

34. BLL did not rent trailers to construction sites.

35. BLL did not rent trailers to Cornerstone.

36. BLL did not rent trailers to Cornerstone's customers.

37. BLL did not rent trailers to Cornerstone's competitors.

38. BLL was not in the same industry as Cornerstone.

39. During Bonavita's employment with Cornerstone, BLL rented trailers for events that took place on the weekend.

40. During Bonavita's employment with Cornerstone, BLL delivered trailer rentals only on weekends.

41. Bonavita did not perform work for BLL while he was working for Cornerstone.

42. Bonavita did not solicit or initiate discussions with customers of Cornerstone about engaging in business with BLL.

43. BLL did not interfere with Bonavita's job duties at Cornerstone.

44. Bonavita's sales and job performance did not decrease while operating BLL on the weekends.

45. Bonavita's work with BLL did not interfere with his work at Cornerstone.

46. While employed by Cornerstone, Bonavita noticed that Lundy received preferential treatment from Cornerstone and Mauthe on the basis of her female sex and gender.

47. During COVID-19, Territory Sales Managers in Bonavita's region participated in weekly team sales calls.

48. Lundy routinely missed sales calls.
49. Lundy received additional preferential treatment from Cornerstone and Mauthe on the basis of her sex.
50. In May 2022, Mauthe talked to Bonavita about missing two sales calls, leaving a cell phone at a construction site, and becoming intoxicated while entertaining a client.
51. Bonavita had attended the client dinner after Mauthe had refused the opportunity and sold approximately $200,000 worth of material to the client as a result of the dinner.
52. Mauthe was aware that Bonavita had alcohol with the client.
53. Mauthe did not reprimand or discipline Bonavita for the profitable client dinner when Mauthe first learned of Bonavita having alcohol with the client.
54. Bonavita received no other coaching during his employment with Cornerstone.
55. In June 2022, Bonavita attended a trade show at Foxwoods Resort Casino.
56. Bonavita expected most of his Cornerstone customers to attend the trade show and asked Lundy and Lima to appear at the show with him.
57. During some down-time at the trade show, Bonavita and Lundy talked about the need to supplement their income because they lost the opportunity for bonuses as a result of COVID-19 limitations on business.
58. Lundy showed Bonavita her Instagram account.
59. Bonavita saw that Lundy advertised a business that she operated.
60. Lundy told Bonavita that she prepared, sold, and delivered organic smoothies to restaurants and gyms in New Jersey.

61. Lundy told Bonavita that she prepared smoothies for sale and delivery "every few days" because they had no preservatives.

62. Bonavita then showed Lundy the Facebook/Instagram account that he made for BLL and explained that he rented high-end restroom trailers for weekend weddings.

63. Bonavita and Lundy both operated what they called a "side business" while employed by Cornerstone.

64. On June 30, 2022, Mauthe and a Cornerstone Human Resources Representative ("HR") called Bonavita.

65. During the call, Mauthe told Bonavita that Bonavita was being terminated effective July 1, 2022 but that his last day working would be June 30, 2022.

66. Mauthe and HR told Bonavita that he was not permitted to have a side business.

67. Mauthe and HR accused Bonavita of not fully committing to Cornerstone.

68. Mauthe and HR accused Bonavita of sharing BLL information with Cornerstone customers while on company time and in his company vehicle.

69. Cornerstone terminated Bonavita on July 1, 2022.

70. Cornerstone's stated reasons for termination are false.

71. Cornerstone's stated reason for termination is a pretext for discrimination on the basis of sex and gender.

72. Upon information and belief, Cornerstone was aware of Lundy's operation of a business unrelated to Cornerstone.

73. Upon information and belief, Mauthe was aware of Lundy's operation of a business unrelated to Cornerstone.

74. Lundy was not disciplined for having a side business.

75. Lundy was not terminated for having a side business.

76. Cornerstone treated employees with side businesses differently on the basis of sex and gender.

77. There is a causal connection between Cornerstone's termination of Bonavita and Bonavita's male sex and gender.

78. As a result of being terminated, Bonavita has suffered emotional distress, anxiety, and depression.

79. As a direct and proximate result of Cornerstone's conduct, Bonavita has suffered and will continue to suffer damages, including economic damages, emotional distress and/or physical sickness damages.

## COUNT ONE

### SEX AND GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

80. Bonavita hereby incorporates Paragraphs 1-79, with the same force and impact as if fully set forth herein.

81. Bonavita is male.

82. Throughout his employment, Bonavita was fully competent to perform his essential job duties.

83. Cornerstone treated Bonavita differently than similarly situated employees due to his male sex and gender, including but not limited to terminating Bonavita for operating a side business.

84. At all times herein, similarly-situated female employees including Lundy were not terminated for operating a side business.

85. Cornerstone violated Title VII of the Civil Rights Act of 1964 by discriminating against Bonavita on the basis of his male sex and gender.

86. On or about June 30, 2022, Cornerstone terminated Bonavita effective July 1, 2022.

87. Cornerstone violated Title VII by terminated Bonavita on the basis of his male sex and gender.

88. As a result of Cornerstone's discrimination and termination, Bonavita has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

89. Bonavita seeks compensatory and punitive damages for Cornerstone's misconduct.

90. As a direct and proximate result of Cornerstone's wrongful conduct, Bonavita is entitled to all damages provided for in 29 U.S.C. § 2617, including punitive damages, compensatory damages, costs, and reasonable attorney's fees.

91. As a result of the foregoing conduct, Bonavita has suffered and will continue to suffer damages, including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

92. Bonavita is seeking damages as a result of Cornerstone's unlawful conduct.

**PRAYER FOR RELIEF**

Wherefore the Plaintiff prays that this court award:

1. Money damages;

2. Costs;

3. Punitive damages, attorney fees, and expert witness fees;

4. Pre-judgment interest

5. Trial by jury; and

6. Such other relief as the Court deems just, fair, and equitable.

THE PLAINTIFF,
VINCENT BONAVITA

By: _____/s/_____
Michael C. McMinn (#*ct27169*)
**THE MCMINN EMPLOYMENT
LAW FIRM, LLC**
1000 Lafayette Blvd., Suite 1100
Bridgeport, CT 06604
Tel: (203) 683-6007
Fax: (203) 680-9881
michael@mcminnemploymentlaw.com

*COUNSEL FOR PLAINTIFF*
