UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VINCENT BONAVITA,<br>    Plaintiff, | :<br>:<br>: | CIVIL CASE NO.<br>3:23-CV-01443 (JCH) |
| v. | :<br>: | |
| CORNERSTONE BUILDING<br>BRANDS, INC.,<br>    Defendant. | :<br>:<br>:<br>: | NOVEMBER 20, 2024 |

**RULING ON MOTION TO DISMISS COMPLAINT (DOC. NO. 15)**

**I.   INTRODUCTION**

The plaintiff, Vincent Bonavita ("Mr. Bonavita"), brings this suit against Cornerstone Building Brands, Inc. ("Cornerstone"), alleging one count of sex and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, section 2000e et seq. of title 42 of the U.S. Code ("Title VII").  Complaint (Doc. No. 1) ("Compl.").

Cornerstone filed a Motion to Dismiss and Memorandum in Support of Motion to Dismiss (Doc. No. 15) ("Def.'s Mem. Supp.") and Defendant's Reply in Support of Motion to Dismiss (Doc. No. 21) ("Def.'s Reply").  The plaintiff opposes the Motion to Dismiss.  Memorandum of Law in Opposition to Motion to Dismiss ("Pl.'s Opp'n") (Doc. No. 20).  For the reasons discussed below, the court grants the Motion.

**II.   ALLEGED FACTS**

Mr. Bonavita, a resident of Connecticut, was hired by Cornerstone as a Territory Sales Manager on February 23, 2020.  Compl. at ¶¶ 7, 11.  He was responsible for selling Cornerstone's products to businesses within Connecticut, his sales territory.  Id. at ¶¶ 8, 11, 14–15.  Mr. Bonavita was primarily managed by John Mauthe ("Mr. Mauthe"), who oversaw several other sales territories.  Id. at ¶¶ 17–18.

1

As a result of the COVID-19 pandemic, Cornerstone reduced in-person activities and training beginning in March 2020, until the summer of 2021.  See id. at ¶¶ 19–20.  Mr. Bonavita received little job training during this time and his manager, Mr. Mauthe, was frequently unavailable to train Mr. Bonavita.  Id. at ¶¶ 22–23.  Cornerstone did, however, expect Territory Sales Managers to attend weekly sales calls.  Id. at ¶¶ 47, 50.  Despite this expectation, Gabrielle Lundy ("Ms. Lundy"), a Territory Sales Manager for Cornerstone working in New Jersey, sometimes missed these calls.  Id. at ¶¶ 28, 48.  Mr. Bonavita, who was similarly required to attend these calls, was cautioned by Mr. Mauthe after Mr. Bonavita missed two sales calls, left his cellphone on a construction site, and appeared to be intoxicated at a dinner with a client.  Id. at ¶ 50.

In January 2022, Mr. Bonavita, while still working for Cornerstone, started a business renting portable lavatories.  Id. at ¶¶ 31–32.  Mr. Bonavita rented his lavatories to event organizers hosting weekend events; he did not rent to construction sites or Cornerstone customers.  Id. at ¶¶ 34–35, 39.  Mr. Bonavita did not work on his lavatory business while working on behalf of Cornerstone and his work for Cornerstone was otherwise unaffected by his Lavatory business.  Id. at ¶¶ 41–44.

In June 2022, Mr. Bonavita and Ms. Lundy attended a tradeshow on behalf of Cornerstone.  Id. at ¶¶ 55–58.  There, Mr. Bonavita told Ms. Lundy about his lavatory business and Ms. Lundy said she also operated her own business, selling smoothies to restaurants and gyms in New Jersey.  Id. at ¶¶ 60, 62.

On June 30, 2022, Mr. Mauthe and an unnamed human resources employee from Cornerstone told Mr. Bonavita that he was terminated, effective July 1, 2022.  Id. at ¶¶ 64–65.  During this conversation, Mr. Mauthe said that Mr. Bonavita was not

permitted to operate a separate business while employed by Cornerstone and suggested that Mr. Bonavita was not committed to his work as a Territory Sales Manager. Id. at ¶¶ 66–67. Mr. Mauthe said further that Mr. Bonavita had shared information about his lavatory business with Cornerstone customers during company time and used his company vehicle to further his lavatory business. Id. at ¶ 68. Ms. Lundy, though she also operated a separate business while working as a Territory Sales Manager, was not disciplined for doing so. Id. at ¶¶ 74–75.

### III. STANDARD OF REVIEW

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a Complaint as true, and draws all reasonable inferences in the nonmovant's favor. See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020). However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678.

### IV. DISCUSSION

A plaintiff claiming discrimination under Title VII must allege "(1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015). The first element of this requirement is met when "an employer discriminates against a plaintiff

by taking an adverse employment action against him." Id.  The second element is met when the plaintiff alleges the action was motivated by a protected characteristic, such as his sex.  Id.  At this stage of the litigation, the Complaint "must be viewed in light of the plaintiff's minimal burden to show discriminatory intent." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015).

Cornerstone argues that Mr. Bonavita's Complaint is deficient in two respects. First, Mr. Bonavita has failed to allege facts that suggest Cornerstone would engage in reverse discrimination as prohibited by Title VII; second, Mr. Bonavita has not alleged facts giving rise to an inference of discrimination.  Def.'s Mem. Supp. at 5–9; Def.'s Reply at 3–5.  Mr. Bonavita opposes both arguments, maintaining that he does not need to allege additional facts giving rise to an inference of reverse discrimination and claiming that the facts alleged are sufficient to satisfy his minimal burden of suggesting that he was a victim of impermissible discrimination under Title VII.  Pl.'s Opp'n at 5–10.[1]  The court considers both of these arguments in turn.

### A.   Reverse Gender Discrimination

According to Cornerstone, Mr. Bonavita, being a male, has an additional burden to present background information suggesting that it was inclined to discriminate against

---

[1] Cornerstone argues that Mr. Bonativa's Opposition should be stricken because his counsel failed to sign it in violation of Federal Rule of Civil Procedure 11.  Def.'s Reply at 5.  Both Mr. Bonavita's memorandum and accompanying certification include a signature mark, an "s" bracketed with slash marks, and counsel's name in the signature block.  Def.'s Opp'n at 11; Def.'s Opp'n Certification at 12. Other courts in this Circuit have accepted the "slash s" mark as a signature.  Hong v. Mommy's Jamaican Mkt. Corp., No. 20-CV-9612 (LJL), 2024 WL 1242507, at *1 n. 2 (S.D.N.Y. Mar. 21, 2024).  Even if the "slash s" mark is insufficient, "Federal Rule of Civil Procedure 5 was amended in 2018 to provide that a filing made through a person's electronic-filing account, together with that person's name on a signature block, constitutes the person's signature."  § 1333 Signature Requirement; Applicability, Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1333 (4th ed.).  Accordingly, the court rejects Cornerstone's argument that it should strike Mr. Bonavita's Opposition.

4

males, or must otherwise allege facts that cause the court to suspect discrimination occurred in this case.  Def.'s Mem. Supp. at 5–8.

"In the Title VII context, the Supreme Court has also steadfastly held male plaintiffs to the same standard as female plaintiffs—no more or less."  Tappe v. All. Cap. Mgmt. L.P., 177 F. Supp. 2d 176, 182 (S.D.N.Y. 2001) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 118 (1998)) (declining to require the plaintiff to allege background circumstances in a reverse discrimination case).  As a result, courts in this District have not required plaintiffs claiming reverse discrimination to provide background information suggesting that defendants discriminate against males.  E.g., Lucibello v. Yale-New Haven Hosp., No. 3:03-CV-0814 (RNC), 2005 WL 578324, at *1 (D. Conn. Mar. 10, 2005) (declining to require that the plaintiff allege background circumstances suggesting the defendant would engage in reverse discrimination); Cintron v. Atticus Bakery, LLC, 242 F. Supp. 3d 94, 100–04 (D. Conn. 2017) (denying the defendant's summary judgment motion as to the male plaintiff's claim of sex discrimination and, in doing so, noting that the plaintiff satisfied his "minimal" burden of raising an inference of discrimination).

Cornerstone cites Olenick v. New York Tel./A NYNEX Co., 881 F. Supp. 113 (S.D.N.Y. 1995) for the proposition that other courts within this Circuit have required plaintiffs to present background circumstances suggesting the defendant would be inclined to engage in reverse discrimination.  Def.'s Mem. Supp. at 5.  In Olenick, the court dismissed a complaint filed by a white female, citing case law from other circuits for the proposition that the plaintiff must present some evidence that the employer "is that unusual employer who discriminates against the majority."  881 F. Supp. at 114.

More recently, however, courts within this Circuit have chosen not to follow Olenick. See, e.g., Maron v. Legal Aid Soc'y, 605 F. Supp. 3d 547, 558 n. 7 (S.D.N.Y. 2022) ("a Title VII case is a Title VII case on the same terms for plaintiffs of all races" (internal quotation marks omitted)); Brand v. New Rochelle City Sch. Dist., No. 19-CV-7263 (CS), 2022 WL 671077, at *11 (S.D.N.Y. Mar. 7, 2022) ("courts in this District have found that white plaintiffs are not held to a higher standard in Title VII cases.").

Cornerstone also cites Aulicino v. New York City Dep't of Homeless Servs., 580 F.3d 73, 80 n. 5 (2d Cir. 2009), to support its argument that Mr. Bonavita must allege background circumstances suggesting Cornerstone might engage in reverse discrimination. Def.'s Mem. Supp. at 5. However, the Aulicino court explained, "we do not decide whether . . . the Title VII plaintiff who alleges discrimination on the basis that he is white, or Caucasian, must proffer evidence of background circumstances reflecting that the defendant is that unusual employer who discriminates against the majority." 580 F.3d at 80 n. 5 (internal quotation marks omitted). Considering that the Second Circuit has declined to adopt a position on the issue of whether background circumstances must be alleged in reverse discrimination cases, the court rejects Cornerstone's argument that Mr. Bonavita should be required to plead background circumstances.

    B.    <u>Inference of Discrimination</u>

At this stage of the litigation, Mr. Bonavita must allege "facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Vega, 801 F.3d at 87. Mr. Bonavita seeks to indirectly show that Cornerstone discriminated against him by contrasting Cornerstone's decision to terminate him for operating his lavatory business with its decision to retain Ms. Lundy

even though she was operating her smoothie business.  Pl.'s Opp'n at 9–10.  Cornerstone's disparate treatment raises an inference of discrimination, Mr. Bonavita argues, because he and Ms. Lundy were similarly situated.  Id. at 1, 9–10.

Cornerstone argues that Ms. Lundy is not similarly situated, and, as a result, Mr. Bonavita's Complaint must be dismissed because it fails to raise an inference of discrimination.  Def.'s Mem. Supp. at 9; Def.'s Reply at 2–5.[2]  Cornerstone maintains that the Complaint fails to allege that it was aware of Ms. Lundy's second business or that Ms. Lundy attempted to sell her smoothies to Cornerstone customers.  Def.'s Mem. Supp. at 8–9; Def.'s Reply at 4–5.

A comparator, Ms. Lundy in this case, is similarly situated to the employee complaining of discrimination, Mr. Bonavita, when they are both "(1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'"  Ruiz v. Cnty. of Rockland, 609 F.3d 486, 494 (2d Cir. 2010) (quoting Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000)).  While the plaintiff and the comparator "must bear a 'reasonably close resemblance'", they do not need to be alike in all respects.  Brown v. Daikin Am. Inc., 756 F.3d 219, 230 (2d Cir. 2014) (quoting Graham, 230 F.3d at 39).  Even so, the plaintiff and the comparator must have engaged

---

[2] Cornerstone attempts to further distinguish Ms. Lundy from Mr. Bonavita by incorporating facts from Mr. Bonavita's Affidavit filed in connection with his claim of workplace discrimination submitted to the Connecticut Commission on Human Rights and Opportunities ("CCHRO") and Equal Employment Opportunities Commission ("EEOC").  Def.'s Mem. Supp. at 9; Def.'s Reply at 2–5.

While other courts in this District have considered charges filed with the CCHRO and EEOC, examination of charges is generally done to locate further support for allegations made in the Complaint.  See, e.g., McBride v. Routh, 51 F. Supp. 2d 153, 155 (D. Conn. 1999) (relying on the plaintiff's charge filed with the CCHRO and EEOC to clarify the allegations in that complaint).  At this stage of the litigation, this court will limit its consideration of facts to those alleged in Mr. Bonavita's Complaint.

7

in "conduct [that is] of 'comparable seriousness.'"  Raspardo v. Carlone, 770 F.3d 97, 126 (2d Cir. 2014) (quoting Graham, 230 F.3d at 40).

Mr. Bonavita has failed to allege facts that suggest he and Ms. Lundy engaged in comparable conduct because the conduct Cornerstone suspected him of engaging in is more serious than Ms. Lundy's alleged conduct.  While Mr. Bonavita alleges that both he and Ms. Lundy operated second businesses while working as Territory Sales Managers for Cornerstone, Compl. at ¶¶ 57–60, Mr. Bonavita does not allege that Ms. Lundy was suspected of soliciting business from Cornerstone customers or using her work vehicle to further her smoothie business.  See id. at ¶ 72.  By contrast, when Mr. Bonavita was terminated, Mr. Mauthe claimed Mr. Bonavita shared information about his lavatories with Cornerstone customers and used his work vehicle to further his lavatory business.  Id. at ¶ 68.  Similarly, while Mr. Bonavita alleges that both he and Ms. Lundy missed sales calls, id. at ¶¶ 48, 50, Mr. Bonavita pleads that he was also warned for leaving his cellphone at a job site and apparently becoming intoxicated during a client event.  Id. at ¶ 50.  Mr. Bonavita does not allege that Ms. Lundy also forgot her cellphone or became intoxicated with clients.

In arguing that his Complaint raises an inference of discrimination, Mr. Bonavita cites Dooley v. JetBlue Airways Corp., 636 F. App'x 16 (2d Cir. 2015) (summary order).  Def.'s Opp'n at 8.  Notably, the Dooley court concluded that the plaintiff in that case did not raise an inference of discrimination because the comparators were excused for missing work due to injuries while the defendant concluded that the plaintiff missed work before she was injured.  Dooley, 636 F. App'x at 20.  As a result, the Dooley court concluded that the plaintiff did not adequately allege that the comparators engaged in

comparable conduct.  Id.  Similarly, in the instant case, Ms. Lundy's alleged conduct does not appear to be of comparable seriousness to Mr. Bonavita's conduct because Cornerstone employees believed he solicited Cornerstone customers, misused his vehicle, misplaced his cellphone, and appeared intoxicated.  See, supra, part II.  Mr. Bonavita does not allege Cornerstone employees thought Ms. Lundy engaged in comparable conduct.  See Compl.  Accordingly, Mr. Bonavita's pleadings do not raise the plausible inference that Cornerstone discriminated against Mr. Bonavita in violation of Title VII.

## V.  CONCLUSION

For the reasons stated above, the court grants the Motion to Dismiss (Doc. No. 15).  This dismissal is without prejudice, and Mr. Bonavita is granted leave to file an amended Complaint if he is able to replead consistent with this Ruling.  The amended Complaint must be filed no later than twenty-one (21) days from the date of this Ruling.

**SO ORDERED.**

Dated at New Haven, Connecticut this 20th day of November 2024.

_____
Janet C. Hall
United States District Judge