UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VINCENT BONAVITA,<br>   Plaintiff, | : | CIVIL CASE NO.<br>3:23-CV-01443 (JCH) |
| v. | : | |
| CORNERSTONE BUILDING<br>BRANDS, INC.,<br>   Defendant. | : | JUNE 16, 2025 |

**RULING ON MOTION TO DISMISS AMENDED COMPLAINT (DOC. NO. 29)**

**I.   INTRODUCTION**

The plaintiff, Vincent Bonavita ("Mr. Bonavita"), brings this suit against Cornerstone Building Brands, Inc. ("Cornerstone"), alleging one count of sex and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, section 2000e et seq. of title 42 of the U.S. Code ("Title VII").  Amended Complaint ("Am. Compl.") (Doc. No. 26).

Before the court is Cornerstone's Motion to Dismiss Amended Complaint (Doc. No. 29), Defendant's Memorandum of Law in Support of Motion to Dismiss Amended Complaint ("Def.'s Mem.") (Doc. No. 29-1), and Defendant's Reply Memorandum in Support of Motion to Dismiss Amended Complaint ("Def.'s Reply") (Doc. No. 31).  Mr. Bonavita opposes the Motion.  See Plaintiff's Opposition to Motion to Dismiss Amended Complaint ("Pl.'s Opp'n") (Doc. No. 30).

For the reasons that follow, the court denies the Motion.

**II.   BACKGROUND**

Mr. Bonavita, a resident of Connecticut, was hired by Cornerstone as a Territory Sales Manager on February 23, 2020.  Am. Compl. at ¶¶ 7, 11.  He was responsible for selling Cornerstone's products to businesses within Connecticut, his sales territory.  Id.

1

at ¶¶ 8, 11, 14–15.  Mr. Bonavita was primarily managed by John Mauthe ("Mr. Mauthe"), who oversaw several other sales territories.  Id. at ¶¶ 17–18.

In January 2022, Mr. Bonavita started a business renting portable lavatories while still working for Cornerstone.  Id. at ¶¶ 31–32.  Mr. Bonavita alleges his lavatory business did not interfere with his work for Cornerstone because he rented his lavatories to event organizers hosting weekend events, not to construction sites, Cornerstone customers or Cornerstone competitors.  Id. at ¶¶ 34–37, 39.

In May 2022, Mr. Mauthe "talked to" Mr. Bonavita about missing two sales calls, leaving his cellphone at a worksite, and becoming intoxicated while entertaining a client at a dinner.  Id. at ¶¶ 50–51.  During the dinner with that Cornerstone client, Mr. Bonavita sold approximately $200,000 worth of Cornerstone products.  See id. at ¶ 51.

On June 30, 2022, Mr. Mauthe and an unidentified human resources employee from Cornerstone allegedly told Mr. Bonavita that he was terminated, effective July 1, 2022.  Id. at ¶¶ 67–68.  During this conversation, Mr. Mauthe supposedly said that Mr. Bonavita was not permitted to operate a separate business while employed by Cornerstone and suggested that Mr. Bonavita was not committed to his work as a Territory Sales Manager.  Id. at ¶¶ 69–70.  Mr. Mauthe allegedly accused Mr. Bonavita of sharing information about his lavatory business with Cornerstone customers during Cornerstone company time and while Mr. Bonavita was in his Cornerstone company vehicle.  Id. at ¶ 71.  Mr. Bonavita denies that he solicited Cornerstone customers about his lavatory business or otherwise worked on his lavatory business during Cornerstone company time.  Id. at ¶¶ 41–42.

Similar to Mr. Bonavita, Gabrielle Lundy ("Ms. Lundy") was a Cornerstone Territory Sales Manager.  Id. at ¶ 28.  Like Mr. Bonavita, Ms. Lundy allegedly operated her own business, selling smoothies, while employed by Cornerstone, missed sales calls, and consumed alcohol at multiple Cornerstone work events.  Id. at ¶¶ 48, 63, 79.  However, unlike Mr. Bonavita, Ms. Lundy was neither disciplined for operating a separate business, though Cornerstone was aware that she operated such a business, nor for consuming alcohol at work events.  Id. at ¶¶ 75–79.

Mr. Bonavita alleges that Cornerstone treated employes who operated separate businesses and consumed alcohol at work events differently on the basis of sex and gender.  Id. at ¶ 80.  Mr. Bonavita further alleges that Cornerstone's stated reasons for terminating him were pretextual, and that Mr. Bonavita's sex and gender played a role in Cornerstone's decision to terminate him.  Id. at ¶ 74, 81.

### III.    LEGAL STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a Complaint as true, and draws all reasonable inferences in the nonmovant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 678.

IV.     DISCUSSION

In order to state a cognizable Title VII discrimination claim, a plaintiff must allege facts raising a plausible inference that the plaintiff (1) "is a member of a protected class;" (2) "was qualified for employment in the position;" and (3) "suffered an adverse employment action;" the plaintiff must also, (4) "[present] some minimal evidence suggesting an inference that the employer acted with discriminatory motivation[.]" Littlejohn v. City of New York, 795 F.3d 297, 307 (2d Cir. 2015).  A plaintiff may raise an inference of discrimination by alleging the defendant treated him disparately, that is, by showing other employees who are not members of the protected group, received favorable treatment.  Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009). "When considering whether a plaintiff has raised an inference of discrimination by showing that [he] was subjected to disparate treatment, . . . the plaintiff must show [he] was similarly situated in all material respects" to the individuals with whom [he] seeks to compare h[im]self."  Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) (internal quotation marks omitted).  Whether a plaintiff is similarly situated in all material respects to a comparator "must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness."  Id. at 40.

Cornerstone argues that Mr. Bonavita's Amended Complaint should be dismissed because Mr. Bonavita fails to allege Ms. Lundy was similarly situated such that a reasonable inference of discrimination could be raised on the basis of Cornerstone's disparate treatment of Mr. Bonavita and Ms. Lundy.  See Def.'s Mem. at

4

6–8; Def.'s Reply at 3–4.  Mr. Bonavita argues that the Amended Complaint alleges facts that raise a plausible inference of gender discrimination.  See Pl.'s Opp'n at 7–10.

The Amended Complaint contains allegations raising a plausible inference that Mr. Bonavita and Ms. Lundy were similarly situated.  They both allegedly held the same position at Cornerstone, and the allegations contained in the Amended Complaint suggest both he and Ms. Lundy were subject to the same standards.  See Am Compl. at ¶¶ 11, 28, 47.

The allegations raised in the Amended Complaint also plausibly suggest Ms. Lundy and Mr. Bonavita engaged in comparable conduct.  Mr. Bonavita alleges that he and Ms. Lundy engaged in conduct that was equally severe, namely, operating businesses separate from Cornerstone and consuming alcohol at work events.  Id. at ¶ 90.  Despite this, Mr. Bonavita alleges further that only he was terminated by Cornerstone while Ms. Lundy was never disciplined, let alone terminated, for consuming alcohol or operating a separate business.  Id. at ¶¶ 71–79.  Cornerstone argues that Mr. Bonavita fails to allege facts raising the inference it was aware of Ms. Lundy's smoothie business.  Def.'s Opp'n at 6–7; Def.'s Reply at 3.  Mr. Bonavita does, however, allege upon information and belief that Cornerstone was aware of Ms. Lundy's business.  Am. Compl. at ¶ 76.  Pleading on the basis of information and belief is appropriate where, as here, the allegations regard information "particularly within [the defendant's] knowledge and control."  Boykin v. KeyCorp, 521 F.3d 202, 215 (2d Cir. 2008).  Cornerstone also argues that Ms. Lundy's alleged behavior as to her smoothie business is not comparable to Mr. Bonavita's behavior as to his lavatory business because Ms. Lundy never solicited business from Cornerstone customers, unlike Mr. Bonavita.  Def.'s Opp'n

at 7; Def.'s Reply at 3–4.  Contrary to Cornerstone's argument, however, Mr. Bonavita specifically alleges that he never solicited business from Cornerstone customers.  Am. Compl. at ¶ 42.  Taking the well-pled allegations contained in Mr. Bonavita's Amended Complaint as true, the court concludes that the Amended Complaint raises a plausible inference that Mr. Bonavita and Ms. Lundy engaged in comparably serious conduct.

The Amended Complaint "must be viewed in light of the plaintiff's minimal burden to show discriminatory intent."  Littlejohn, 795 F.3d at 311.  Mr. Bonavita has satisfied this minimal burden.  The allegations contained in the Amended Complaint plausibly raise an inference of gender and sex discrimination in violation of Title VII.  While evidence may surface at later stages of this litigation suggesting that Ms. Lundy and Mr. Bonavita were not actually similarly situated, "whether two employees are similarly situated" usually "presents a question of fact, rather than a legal question to be resolved on a motion to dismiss."  Brown v. Daikin Am. Inc., 756 F.3d 219, 230 (2d Cir. 2014).  Having concluded that Mr. Bonavita has satisfied his minimal burden of raising an inference of discrimination via the allegations contained in his Amended Complaint, the court denies Cornerstone's Motion.

## V.    CONCLUSION

For the reasons stated above, the court denies the defendant's Motion to Dismiss Amended Complaint (Doc. No. 29).

**SO ORDERED.**

Dated at New Haven, Connecticut this 16th day of June 2025.

                                              /s/ Janet C. Hall
                                              Janet C. Hall
                                              United States District Judge